**Affirmed and Memorandum Opinion filed October 2, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00412-CV

## IN THE INTEREST OF C.G., III AKA C.G., A CHILD

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-02029J**

## M E M O R A N D U M   O P I N I O N

Appellant D.M.W. (Mother) appeals the trial court's final decree terminating her parental rights and appointing the Department of Family and Protective Services as sole managing conservator of her child, C.G. (Chris).[1] The trial court terminated Mother's rights on the predicate grounds of endangerment, a previous termination, failure to comply with a family service plan, and use of a controlled substance in a manner that endangered the health or safety of the child. *See* Tex. Fam. Code Ann.

---

[1] We use pseudonyms to refer to appellant, the child, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

§ 161.001(b)(1)(D), (E), (M), (O) & (P) (West Supp. 2017). The trial court further found that termination of Mother's rights was in the child's best interest, and named the Department managing conservator of the child. Chris's father's (Father) parental rights were terminated on the grounds of endangerment and failure to follow a family service plan. Father has not appealed the termination of his parental rights.

In a single issue Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the child. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Pretrial Proceedings

#### 1.    The Department's Investigation

Chris was removed from Mother when he was two days old due to allegations that both his parents were using illegal drugs. Chris was originally placed in a Parental Child Safety Placement and moved to his father's home when he was approximately six months old.

When Chris was born, hospital staff received an anonymous tip that Mother had a history of mental illness and had two other children removed from her care. Mother had been diagnosed with bipolar disorder and was taking medication prescribed for bipolar disorder when she became pregnant. Mother discontinued medication because she did not feel the symptoms of the disease.

Two of Mother's older children were removed from her care because the father of those children was sexually abusing them. Chris had a different father.

At Mother's request, the Department placed Chris with Father in January 2017 when Chris was approximately six months old. The Department investigator explained to Father that Mother was not allowed to spend the night with the child

2

and that a visitation schedule should be arranged to accommodate both parents. The investigator observed that Mother and Father's relationship was volatile. Mother accused Father of physically abusing Chris, but the investigator visited the child and did not see evidence of physical abuse. Mother accused Father of abusing drugs. Father voluntarily submitted to drug testing. Father's urine test was negative, but a hair test was positive for cocaine and hydrocodone.

After Father tested positive for drugs, the Department attempted to find another placement for the child. Father denied using drugs, but admitted receiving "medicine" from an individual because he has back pain. The investigator explained that taking prescription pain killers without a prescription was considered an illegal use of drugs. Father provided the investigator with his mother-in-law's name and phone number as a possible placement for Chris. The mother-in-law declined the placement.

The Department sought temporary managing conservatorship of Chris due to both parents' positive drug tests and their inability to provide an appropriate caregiver for placement.

### 2.     Mother's Department History

In 2012, the Department received a referral of neglectful supervision, which was "ruled out." At the time Mother had been diagnosed with bipolar disorder and schizophrenia. She gave birth to a daughter on July 24, 2012. The baby was born prematurely and weighed just over three pounds at birth. Mother tested positive for marijuana during that pregnancy, and tested negative approximately one month before birth. The baby's three-year-old sibling was in Department foster care at the time of the birth.

In 2014, the Department received a referral of physical abuse, which was

3

disposed as "unable to determine." The two-year-old child was seen with broken blood vessels in her eye. Law enforcement officers did not see the injury when they went to the home.

On August 18, 2015, Mother's parental rights to the child born in 2012 and her older sibling born in 2013 were terminated on endangerment grounds.

### 3. Mother's Criminal History

Mother had a conviction for misdemeanor assault in 2000, unauthorized use of a motor vehicle in 2001, and another misdemeanor assault in 2004. Mother was charged with a Class C traffic offense in 2015. The removal affidavit referred to the arresting agency for disposition.

### 4. Family Service Plan

The trial court signed temporary orders requiring both parents to comply with family service plans. Mother's plan required her to:

- participate and complete a drug and alcohol assessment and follow all recommendations;
- participate in and successfully complete a psychological evaluation and follow all recommendations;
- maintain a positive support system that is safe, crime-free, drug and alcohol free, and will not inflict abuse or neglect on her children;
- refrain from engaging in any criminal activities;
- provide her current caseworker with any and all sources of income for herself and her children;
- maintain stable and safe housing for a minimum of six months consecutively;
- participate in, giving truthful information, all meetings, court hearings, and other planning sessions regarding her child;
- provide the Department worker with a release of information for

4

all service providers, medical personnel, and officers of the court to obtain records and progress information regarding her case;

- maintain contact with her current Department caseworker at least once a month by phone, email, or in person to discuss progress made and any other issues of concern in completing recommended tasks;

- participate in random drug or alcohol testing upon request by the Department or a provider with the understanding that any refusal of drug or alcohol testing will be considered as testing positive; and

- attend, actively participate in, and successfully complete parenting classes.

## B.      Trial Testimony

At the beginning of trial, the Department introduced documentary evidence in the form of returns of service, a prior decree of termination in which Mother's rights were terminated to two other children on endangerment grounds, adjudication of Father's paternity, the family service plans, both parents' drug test results, and criminal records of both parents. Mother did not object to any of the Department's exhibits. Father objected to a misdemeanor conviction from 2001 as too remote. The trial court admitted Father's prior criminal conviction over his objection.

The prior termination decree reflected that in August 2015, Mother's parental rights were terminated to two children, who were two and three years old at the time. Mother's parental rights were terminated on the grounds of endangerment, constructive abandonment, failure to follow a family service plan, and use of a controlled substance in a manner that endangered the health or safety of the children.

Mother had positive drug tests for marijuana in December 2016, February 2017, March 2017, April 2017, and June 2017. In September 2017, Mother tested positive for benzoylecgonine, cocaine, and marijuana. In December 2017 and February 2018, Mother tested positive for benzoylecgonine and cocaine.

5

Mother had criminal convictions for assault in May 2000, unauthorized use of a motor vehicle in March 2001, and assault with bodily injury in April 2004.

The caseworker testified that Chris had been living with the foster family for approximately ten months. The foster parent with whom Chris is living is willing to adopt him. Chris was thriving in the foster home. Chris came into the care of the Department because Mother was using drugs, which left her children in danger because no one was caring for them. The caseworker noted that Mother's rights to previous children had been terminated on endangerment grounds. Since Chris was removed, Mother became pregnant with twins. The caseworker testified that Mother tested positive for drugs throughout the case including when she was pregnant with twins, which were also removed at birth. Both parents' visitation rights were suspended due to positive drug test results.

With regard to the family service plan, Mother completed parenting classes and a substance abuse assessment. Mother appeared at all court hearings. Mother discontinued her prescribed medication while pregnant, but continued to take illegal drugs.

The foster mother has made plans for Chris's future education and he is thriving in her care. The foster home is safe and stable, and it would be in Chris's best interest for him to remain in the foster parent's care.

At the conclusion of trial, the trial court terminated Mother's parental rights on the grounds of endangerment, previous termination, failure to follow the family service plan, and use of a controlled substance in a manner that endangered the health or safety of the child.

## II. ANALYSIS

In a single issue Mother challenges the legal and factual sufficiency of the

evidence to support the trial court's finding that termination is in the best interest of the child.

## A.    Standards of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We review the legal sufficiency of the evidence by considering all evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have

disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, this does not compel us to disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

## A.      Predicate Termination Grounds

Mother concedes the evidence is legally and factually sufficient to support the trial court's finding that her parental rights were terminated to other children on the grounds of endangerment supporting the trial court's finding of the predicate ground under section 161.001(b)(1)(M) of the Texas Family Code. Mother does not challenge the trial court's findings on the predicate grounds.

8

**C.      Best Interest of the Child**

In her sole issue Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the child.

The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

Courts apply a strong presumption that the best interest of the child is served by keeping the child with her natural parents, and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment also is presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

In analyzing whether termination of Mother's parental rights was in Chris's best interest, we focus on the evidence regarding the nature of the relationship

9

between Chris and Mother.

1. *Desires of the child*

At the time of trial Chris was 22 months old. When a child is too young to express his desires, the fact finder may consider that the child has bonded with the foster parent, is well cared for by the foster parent, and has spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Mother argues that she bonded with Chris during her visitation while the termination case was pending.

The record reflects that Chris is in a foster-to-adopt home. The caseworker testified that the foster mother has made plans for Chris's future education and he is thriving in her care. The foster home is safe and stable, and it would be in Chris's best interest for him to remain in the foster parent's care. Mother's visitations were limited as they were suspended due to her continued drug use.

2. *Present and future physical and emotional needs of the child*

Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *See In re D.R.A.*, 374 S.W.3d at 533. The goal of establishing a stable, permanent home for a child is a compelling government interest. *Id*.

While some children may have extraordinary physical and emotional needs requiring extra care, all children have physical and emotional needs that must be met on a daily basis. The record reflects that Chris does not have extraordinary needs. With regard to Chris's emotional and physical needs, evidence shows that Mother has not provided for his past or present physical and emotional needs.

Mother argues that, "it remains speculative" whether the current foster mother can meet Chris's future physical and emotional needs. The fact that the child is

currently doing well is evidence that the foster mother can meet the future needs. Despite Mother's argument, the record reflects Mother did not have stable employment and continued to use illegal drugs even after her child was removed. A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

3.     *Present and future physical and emotional danger to the child*

With regard to this factor we note that Mother continued inappropriate behaviors while the termination case was pending, including her activities involving illegal drugs, subjecting her child to an uncertain future that endangered her child's safety and stability. *See In re J.O.A.*, 283 S.W.3d at 345. Evidence of a parent's unstable lifestyle can also support the conclusion that termination is in the child's best interest. *In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *10 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.). "Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *See In re B.Z.S.*, No. 14-16-00825-CV, 2017 WL 536671, at *5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.).

4.     *Parental abilities of those seeking custody, stability of the home or proposed placement, and plans for the child by the individuals or agency seeking custody*

These factors compare the Department's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

Mother continued to use drugs and live in an unstable environment after Chris was removed from her care. Mother concedes that the foster parent has been certified through the Department and presumably has "adequate parenting skills." Mother argues, however, that she has completed her parenting classes and has gained further insight into the ability to parent.

The fact finder may consider a parent's parenting skills in a best-interest analysis. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). The record reflects, however, that Mother continued to use drugs while this case was pending including while pregnant with twins who were removed from her care at birth. Although a reasonable fact finder could credit Mother's completion of parenting classes and decide it justified the risk of preserving the parent-child relationship, we cannot say the trial court acted unreasonably in finding the child's best interest lay elsewhere. *See In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). It is not our role to reweigh the evidence on appeal, and we may not substitute our judgment of the child's best interest for the considered judgment of the fact finder.

### 5.    *Programs available to assist in promoting the child's best interest*

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The caseworker testified that Mother failed to complete her family service plan. Although Mother contends she completed some services, the evidence established that she did not fully complete the plan. Mother offered no excuse for failure to complete the plan.

Mother's failure to complete the court-ordered service plan demonstrates that she is unwilling to take advantage of the services offered to her by the Department

and casts doubt on her parenting abilities. *See In re I.L.G.*, 531 S.W.3d 346, 355–56 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); Tex. Fam. Code § 263.307(b)(10), (11).

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the child's best interest. Based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating Mother's rights was in the child's best interest so that he could promptly achieve permanency through adoption. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet). Accordingly, we overrule Mother's challenge to the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding.

## III.  CONCLUSION

Having concluded that the evidence is legally and factually sufficient to support the finding that termination of Mother's parental rights is in the best interest of Chris, we affirm the judgment terminating Mother's parental rights and naming the Department managing conservator.


/s/    Marc W. Brown
        Justice


Panel consists of Justices Christopher, Jamison, and Brown.

13