## Fourth Court of Appeals
### San Antonio, Texas


## OPINION

No. 04-18-00635-CV

**IN THE INTEREST OF E.F.**, J.P.V., V.J.V., and R.J.V., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01049
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Luz Elena D. Chapa, Justice
               Beth Watkins, Justice

Delivered and Filed: May 22, 2019

AFFIRMED

Appellant mother ("Mother") appeals the trial court's order terminating her parental rights.

On appeal, Mother contends the evidence is legally and factually insufficient to support the

grounds upon which her rights were terminated as well as the best interests finding.  We affirm the

trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") became

involved with Mother and her children when Mother left the children alone at the Haven for Hope

---

[1] The Honorable Peter Sakai is the presiding judge of the 225th District Court, Bexar County, Texas.  The order of termination was signed by the Honorable Charles E. Montemayor, Associate Judge.

shelter. When the shelter was unable to contact Mother, the Department removed the children and placed them in foster care.

Ultimately, the Department moved to terminate Mother's parental rights on numerous grounds. After the August 2018 final hearing, the trial court terminated Mother's parental rights on two grounds and found termination would be in the children's best interests.[2] *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(O), (P), 161.001(b)(2). Mother appealed.

**ANALYSIS**

Mother challenges the legal and factual sufficiency of the evidence in support of the trial court's findings with regard to the grounds for termination and best interests.[3] *See* TEX. FAM. CODE §§ 161.001(b)(1)(O), (P), 161.001(b)(2).

***Standard of Review***

Clear and convincing evidence must support a trial court's findings under section 161.001(b)(1) and (b)(2) of the Texas Family Code ("the Code"). *See* TEX. FAM. CODE § 161.001(b). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard because termination of parental rights implicates due process. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015). When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See*

---

[2] The trial court also terminated the parental rights of the children's respective fathers. The fathers, however, did not appeal.

[3] The trial court took judicial notice of pleadings, service of process documents, orders, service plans, and CASA reports. A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed. *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.); *In re B.R.*, 456 S.W.3d 612, 681 n.4 (Tex. App.—San Antonio 2015, no pet.). Thus, a court may, for example, take judicial notice that a pleading has been filed, of its own orders, or that it signed an order adopting a service plan and the plan's requirements. *In re B.R.*, 456 S.W.3d at 681 n.4. However, a court may not take judicial notice of allegations contained in such documents and the allegations cannot be used to support a termination order, i.e., a court may not take judicial notice of the truth of allegations in its records. *In re A.R.R.*, 2018 WL 6517148, at *1; *In re B.R.*, 456 S.W.3d at 681 n.4. Thus, in our sufficiency review, we will not consider allegations in the documents the trial court judicially noticed.

TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). These standards require that we determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination is in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *In re J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

### *Sufficiency of the Evidence — Grounds for Termination*[4]

#### *Applicable Law*

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in a child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re A.R.R.*, 2018 WL 6517148, at *1. If multiple predicate grounds are found by the trial court, we will affirm based on any one ground supported by sufficient evidence, assuming a proper best interest finding. *In re A.R.R.*, 2018 WL 6517148, at *1; *see In re A.A.T.*, No. 04-16-00344-CV, 2016 WL 7448370, at *10 (Tex. App.—San Antonio Dec. 28, 2016, no pet.) (mem. op.).

---

[4] Although we recognize the trial court and the parties in this proceeding had many hearings before the date of trial, we emphasize that none of the previous hearings constitute evidence that can support the trial court's order terminating a parent's rights. The only evidence that can support the trial court's order is that evidence admitted at trial. The reporter's record in this case is 53 pages total, including the cover, list of appearances, table of contents, and certification (4 pages), announcements and information about service on the fathers (3 pages), substantive evidence about the fathers (4 pages), and the closing arguments and court's pronouncements (8 pages). That leaves 34 pages of evidence to establish, by clear and convincing evidence, not only the grounds for termination but also that it is in the best interests of these children to permanently sever their relationship with their mother. We are mindful of the extraordinary burdens placed on all participants in this system. Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives, however, we urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination.

The trial court found Mother's parental rights should be terminated on two statutory grounds, subsections (O) and (P) of section 161.001(b)(1). *See* TEX. FAM. CODE §§ 161.001(b)(1)(O), (P). Thus, if we determine the evidence is sufficient to support either ground — and that the evidence is sufficient to support the trial court's best interests finding — we must affirm the termination. *See In re A.R.R.*, 2018 WL 6517148, at *1.

To terminate parental rights based on section 161.001(b)(1)(O), the trier of fact must find by clear and convincing evidence that the parent:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department … for not less than nine months as a result of the child's removal from the parent … for the abuse or neglect of the child.

TEX. FAM. CODE 161.001(b)(1)(O). Mother does not challenge the fact that the Department removed the children for abuse or neglect or that the Department had temporary managing conservatorship of the children for more than nine months. These unchallenged findings are binding on this court if supported by the record. *See In re E.C.R.*, 402 S.W.3d 239, 242 (Tex. 2013).

### *Application*

The record supports the unchallenged findings. The Department removed the children in May 2017, which was more than nine months before the August 2018 final hearing. During that time, the Department was the temporary managing conservator for the children. The Department case worker, Dietra Marquez, testified the children were removed because they were left alone at the Haven for Hope shelter. The children were dirty and had been urinating in cups because they were afraid to leave the room. Representatives of Haven for Hope tried to contact Mother, but the attempts were unsuccessful. Thus, the record shows the children were removed for neglect and were in the Department's care for more than nine months. *See* TEX. FAM. CODE 161.001(b)(1)(O).

The court approved Mother's service plan and ordered compliance with its terms. Mother signed the service plan, and the trial court took judicial notice of its requirements. The service plan required Mother to: (1) engage in visitation with her children; (2) complete parenting classes; (3) submit to a psychological evaluation before beginning individual counseling; (4) refrain from illegal drug use and submit to random drug tests; and (5) maintain stable housing and employment.

The evidence shows Mother did not complete all of the court-ordered services, which provides a basis for termination under subsection (O). *See In re I.L.G.*, 531 S.W.3d 346, 354 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Mother was required to attend parenting classes. Mother was twice referred to the VENT Program, which included parenting classes mandated by the service plan. Mother attended a single session and was discharged for non-attendance. Mother testified she did not attend because the instructor continually cancelled classes and she believed she would be able to re-engage at some point. However, the evidence shows Mother signed her service plan in June 2017, yet she did not begin the program until April 2018. She never re-engaged in the VENT Program nor did she complete any other parenting class as required by the service plan.

Additionally, the service plan mandated that Mother not engage in drug use and submit to random drug testing. The evidence shows Mother engaged in drug use, and tested positive for methamphetamine at a March 2018 hair follicle exam. Not long after this exam, Mother began shaving her head, precluding further hair follicle exams. Mother testified she shaved her head because a mental illness causes her to pull her hair out, leaving bald spots. Ms. Marquez said she was aware of Mother's condition, but never saw any bald spots before Mother shaved her head.

Furthermore, the service plan provided that any missed tests would constitute a positive drug test. Mother missed a requested test sometime after July 2018. Mother testified she missed the test because when she arrived at LabCorp, there was no paperwork authorizing the test. Ms.

Marquez stated there was no paperwork because Mother appeared the day after the test was scheduled, explaining paperwork is only good for the day the test is actually to take place. Mother stated she did not go on the originally scheduled date because she had to work.

Pointing to the foregoing evidence, Mother argues she established by a preponderance of the evidence that she: (1) was unable to comply with specific provisions of the court-ordered service plan, and (2) made a good-faith effort to comply and her failure to comply was not her fault. *See* TEX. FAM. CODE § 161.001(d) (stating it is a defense to termination for failure to comply with court order if parent proves by preponderance of evidence that she was unable to comply with specific provision and she made good-faith effort to comply and failure to do so was not her fault). Thus, Mother contends the trial court was precluded from terminating her parental rights based on section 161.001(b)(1)(O). Mother argues her mental health issues precluded her ability to complete all of the requested hair follicle exams. Mother testified she shaved her head in an effort to deal with bald spots resulting from a mental condition that caused her to pull her hair out. This might show an inability to comply with hair follicle tests after March 2018, but it does not explain or excuse prior positive results.

In addition, the evidence relied upon by Mother would excuse only her failure to submit to random drug testing; it would not excuse her failure to complete the mandated parenting classes or the requirement that she remain drug free. We have found no evidence, nor does Mother point to any, regarding her inability to comply with the requirement that she complete the mandated parenting classes. Mother references her mental health issues, but there is nothing in the record to suggest these issues, for which Mother is medicated, precluded completion of her parenting classes. Moreover, the service plan required that Mother not only submit to drug testing, but that she remain drug free. Neither the evidence pointed to by Mother nor any other evidence in the

record shows her mental health condition made her unable to comply with the requirement that she not engage in illegal drug use.

Mother refers to completed portions of her service plan, e.g., stable housing, employment, as well as services in which she continued to engage up to the time of the final hearing, including outpatient drug treatment and individual counseling. Even if there is evidence supporting completion or good faith engagement in these services, the evidence still shows an unexcused failure to complete other service plan requirements.

Reviewing the evidence under the applicable standards, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Mother failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of her children and that Mother failed to prove by preponderance of evidence that she was unable to comply with specific provisions and she made a good-faith effort to comply and failure to comply was not her fault. *See* TEX. FAM. CODE §§161.001(b)(1)(O), 161.001(d). Having concluded the evidence is sufficient to support the trial court's finding under subsection (O), we need not review the sufficiency of the evidence to support the subsection (P) finding.[5] *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, 2018 WL 6517148, at *1.

### *Sufficiency of the Evidence — Best Interests*

#### *Applicable Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex.

---

[5] Subsection (P) provides that a parent's rights may be terminated if the parent used an illegal controlled substance in a manner that endangered the health and safety of her child and: (1) failed to complete a court-ordered substance abuse program, or (2) after completion of a program, continued to abuse a controlled substance. TEX. FAM. CODE § 161.001(b)(1)(P).

2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Code. *Id.* § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the State of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2012).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.* In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child, not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

### *Application*

The Department removed the children from Mother after she left them alone at Haven for Hope. *See* TEX. FAM. CODE § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d 371–72. When found, the children were dirty and "[w]ere basically hiding in their room," refusing to leave for fear they would be locked out. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d 371–72. They were urinating in cups to avoid leaving the room. Haven for Hope representatives attempted to contact Mother, but could not reach her. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d 371–72. Mother stated she left the shelter for a day job, but her car broke down. The evidence suggests — given the children's

condition and their need to urinate in cups — that Mother was gone for a significant amount of time without contacting either her children or the shelter. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d 371–72.

The evidence shows Mother engaged in drug use, testing positive on several hair follicle tests. *See* TEX. FAM. CODE §§ 263.307(b)(8) (whether there is history of substance abuse by child's family), 263.307(b)(12); *Holley*, 544 S.W.2d 371–72. After she tested positive for methamphetamine at a March 2018 hair follicle exam, she began shaving her head, which precluded further hair follicle exams. Mother testified she shaved her head because a mental illness causes her to pull her hair out, but Ms. Marquez stated she never saw any bald spots. *See Holley*, 544 S.W.2d 371–72. Sometime after the July 10, 2018 permanency hearing, Mother's outpatient treatment facility requested a drug test, and Mother tested negative.

March 2018 was the last time Mother affirmatively tested positive, but she missed a requested test sometime after July 2018, which qualifies as a positive result. *See* TEX. FAM. CODE §§ 263.307(b)(8), 264.307(b)(12); *Holley*, 544 S.W.2d 371–72. Mother provided an excuse for the missed test, testifying there was no paperwork authorizing the test. *See Holley*, 544 S.W.2d 371–72. However, Ms. Marquez testified there was no paperwork because Mother appeared the day after the test was scheduled. *See* TEX. FAM. CODE §§ 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete services and to cooperate with agency's close supervisions); *Holley*, 544 S.W.2d 371–72. Mother stated she did not go on the scheduled date because she had to work. *See Holley*, 544 S.W.2d 371–72.

During an unannounced visit to Mother's apartment, Ms. Marquez found "a pipe with a plate with very distinguished lines on the plate." *See* TEX. FAM. CODE §§ 263.307(b)(8), 264.307(b)(12); *Holley*, 544 S.W.2d 371–72. The items were found in a closet, and according to

Ms. Marquez, the pipe looked as if it could be used for smoking. Mother denied any knowledge of the items and stated she did not have a roommate.

Despite Mother's contention, during that same visit, Ms. Marquez found men's clothing, including underwear, in the apartment. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d 371–72. Mother stated she had collected the clothes because she thought her children might be able to use them. *See Holley*, 544 S.W.2d 371–72. Ms. Marquez also testified it appeared as if people had been sleeping in the twin beds designated for the children. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d 371–72. The beds were pushed together. A representative for SAMMinistries testified Mother was being evicted from the apartment for, among other things, having unauthorized tenants in the apartment. *See* TEX. FAM. CODE § 263.307(b)(10); *Holley*, 544 S.W.2d 371–72. Although the eviction was imminent at the time of trial, the representative testified SAMMinistries would rehouse Mother in a different apartment complex and support her with full rent and utilities. *See Holley*, 544 S.W.2d 371–72.

With regard to her service plan, Mother knew the actions she was required to take in June 2017. However, it was not until April 2018 that Mother attended a session of the VENT Program, which including parenting classes mandated by the service plan. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11) (willingness and ability of child's family to effect positive changes within reasonable time); *Holley*, 544 S.W.2d 371–72. She attended a single session and was discharged for non-attendance. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72. Mother also failed to complete her outpatient drug treatment prior to the final hearing. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72. She also missed mandated drug tests, shaved her head precluding hair follicle tests, and tested positive on several drug tests. *See* TEX. FAM. CODE §§ 263.307(b)(8), 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72.

The evidence shows Mother has housing through SAMMinistries, but has issues with following program rules, resulting in a pending eviction. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72. Although Mother will be rehoused in a new apartment complex through the SAMMinistries program, she will need to follow program requirements to maintain her housing, which she was not previously able to do. *See In re E.D.*, 419 S.W.3d at 620 (holding trier of fact may measure parent's future conduct by past conduct in determining best interest). Mother has stable employment as a notary public and certified tax preparer — she has an associate's degree in accounting — and recently qualified for disability payments due to her "Bipolar with mixed episode III, mania" diagnosis. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72. Thus, Mother may be able to provide housing and support for the children, but the evidence suggests she has issues staying within the mandates of her housing program, which prohibited unauthorized tenants. *See* TEX. FAM. CODE §§ 263.307(b)(10), 263.307(b)(11); *Holley*, 544 S.W.2d 371–72.

Mother attended visitation with her children, but initially had issues arriving on time. As for the children's desires, the two oldest children testified they want to remain in their current placements. *See Holley*, 544 S.W.2d 371–72. E.F., who is in high school, is currently in a supervised independent living program. According to Ms. Marquez, E.F. wants to remain in the program until she graduates from high school and begins college. *See Holley*, 544 S.W.2d 371–72. J.P.V., a thirteen-year-old boy, has requested that he be permitted to remain in the care of the Department. *See Holley*, 544 S.W.2d 371–72. The two youngest children are in foster care. No evidence was presented as to their conservatorship desires. The Department is exploring potential foster-to-adopt homes. According to Ms. Marquez, all of the children are doing well in their current placements. *See Holley*, 544 S.W.2d 371–72.

Based on the relevant *Holley* factors, the factors set out in section 263.307(b) of the Code, the applicable standard of review, and the evidence, we conclude the trial court could have reasonably determined termination of Mother's parental rights is in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

We hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to conclude:

(1) Mother failed to comply with one or more provisions of her court-ordered service plan, *see* TEX. FAM. CODE §161.001(b)(1)(O);

(2) Mother failed to prove she was unable to comply with her service plan, made a good-faith effort to comply, and failure to comply was not her fault, *see* TEX. FAM. CODE § 161.001(d); and

(3) termination is in the children's best interests. *See id.* § 161.001(b)(2).

Accordingly, we overrule Mother's sufficiency complaints and affirm the trial court's termination order.

Beth Watkins, Justice