

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00565-CV

**IN THE INTEREST OF T.A.G.**, J.Y.G., and N.J.G., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA00099
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: May 19, 2021

AFFIRMED

J.G. ("Father") appeals the trial court's order terminating his parental rights to the children who are the subject of this suit. He argues the evidence is legally and factually insufficient to support the trial court's findings as to the existence of a predicate ground under Texas Family Code section 161.001(b)(1) and that termination is in the children's best interest. Father also challenges the conservatorship finding. We affirm.

### BACKGROUND

This case concerns three children: T.A.G., who was 14 at the time of trial in November 2020; J.Y.G., who was 12; and N.J.G., who was 10. On January 14, 2020, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Father's parental rights. The petition lists Father as the presumed father of J.Y.G. and N.J.G. and the alleged father

of T.A.G. The Department also sought termination of the parental rights of the mother of the children ("Mother"). In November 2020, the trial court held a trial via Zoom and issued an order terminating the rights of Mother and Father. Only Father appeals.

A Department investigator testified that the children came into the Department's care following intakes alleging that Mother was using illegal substances, did not have the children in school, had the children stealing, and that Mother had been arrested for possession of methamphetamine. According to the investigator, Father was rarely in contact with the children and did not have a home for the children to live in. At the time the investigation began, J.Y.G. was living with her paternal grandmother and was in school. The other children, N.J.G. and T.A.G., were living with Mother, had been living in hotels, and had not been in school for over a year. According to the investigator, J.Y.G. stated that her parents were using drugs. The investigator testified that, at the time of the investigation, she had concerns with Mother's and Father's drug use and not having stable housing.

The Department's caseworker testified that she had concerns for the children because the parents stopped visiting or participating in any services. Following the removal of the children, the Department created a service plan for Father. As part of this court-ordered plan, Father was required to complete a drug assessment and attend parenting classes. The caseworker reviewed the plan with Father, and Father signed it. However, Father did not complete any of the services his plan required of him.

The caseworker testified that T.A.G. stated there was not enough food to eat sometimes. She also testified that Father stated he was self-employed as a contractor, but he never provided proof of his job or earnings and did not secure housing at any point throughout the case. According to the caseworker, at the time of trial, Father had not had any contact with the children since April 3, 2020. She stated that the children told her they were concerned about Father because they had

not heard from him, except for the occasional texts or calls their grandmother told them about. The caseworker testified that she does not believe it is in the best interest for the children to return to Father because Father had not met the children's basic needs by providing adequate food, shelter, or education to them. The caseworker also testified that she remained concerned about Father's drug activity because Father has failed to complete any drug tests.

Father testified that, at the commencement of the case and at the time of trial, he did not have housing. He further testified that he could not complete his parent-child visitations or parenting classes due to the COVID-19 pandemic, which removed visits and classes to a virtual environment. Father did not own a computer; he only had a cellular telephone. According to Father, he could not meet virtually with the children on his phone due to poor service and inability to see them on the camera. Father testified that he had not completed any of the services he was ordered to complete on the service plan.

At the time of trial, the children were placed with their paternal grandmother and were thriving. According to the investigator, the placement met all the children's needs and there were no barriers to the paternal grandmother adopting the children.

Based on this evidence, the trial court ordered the termination of Mother's and Father's parental rights to T.A.G., J.Y.G., and N.J.G. pursuant to section 161.001 of the Texas Family Code. The order also appointed the Department as managing conservator of the children. Father timely appealed.

## STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind

of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under a legal sufficiency review, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. Under a factual sufficiency review, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

Under both standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence[.]" *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.). We "must give due deference to a jury's factfindings . . . and should not supplant the jury's judgment with [our] own." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## PREDICATE GROUNDS

The trial court found the Department had proved statutory ground section 161.001(b)(1)(O). Subsection (O) allows for termination of parental rights if the trial court finds by clear and convincing evidence that the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship" of the Department "for not less than nine months as the result of the child's removal from the parent

under Chapter 262 for the abuse or neglect of the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *see also id.* §§ 262.001–.352. Father argues the evidence as to this finding is insufficient because it is conclusory and requires the court to make inferences instead of conclusively demonstrating that he failed to complete his service plan. According to Father, he attempted to comply with the requirements of his service plan but was unable to do so because the COVID-19 pandemic required all services to be conducted virtually, which posed difficulties for him.

The court approved Father's service plan and ordered compliance with its terms. Father signed the service plan, and the trial court took judicial notice of its requirements. The service plan required Father to: (1) maintain stable housing and employment; (2) complete parenting classes; (3) complete a scheduled drug assessment, including participation in random urine analysis and hair-follicle drug testing; (4) submit to a psychological evaluation; and (5) build a support network to assist him in caring for the children.

The evidence shows Father did not complete any of the court-ordered services, which provides a basis for termination under subsection O. *See In re I.L.G.*, 531 S.W.3d 346, 355–56 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Father was required to complete a drug assessment, which included submitting to random urine analysis and hair-follicle drug testing. Father did not submit to any of the required drug tests. Father testified he did not attend because he was out of town on the date of his first scheduled appointment and arrived at the drug testing site too late. Father stated that he tried to attend his drug testing two more times but was unable to do so.

Additionally, the service plan mandated that Father participate in parenting classes, and the evidence shows that Father did not complete his parenting classes. Father testified that he

attempted to begin the parenting classes via Zoom, but that he could only call in; however, video participation was required.

Furthermore, the service plan required Father to maintain stable housing and income, and to show proof of such income. The evidence shows that Father neither maintained stable housing nor showed proof of income. Father did not have a home when the case began, and he testified that he did not have housing at the time of trial. Father testified that he was self-employed as a contractor, but he failed to provide any proof of his income, such as paycheck stubs or receipts of payments.

Father argues that he could not complete his services because of the requirements for virtual participation that were imposed during the COVID-19 pandemic. He contends he did not have a computer and his phone only allowed him to participate on Zoom conferences with audio and not also with video. While Father's testimony, if credited, could excuse his failure to complete parenting classes, the testimony does not explain or excuse Father's failure to complete his mandated drug assessment or the requirement of his service plan that he maintain stable housing and income. Evidence of Father's failure to complete his drug assessment and show proof of stable housing and employment, as ordered by the trial court, is legally and factually sufficient evidence to support the subsection O finding. *See In re Z.M.M.*, No. 04-18-00099-CV, 2019 WL 4805399, at *5 (Tex. App.—San Antonio Oct. 2, 2019, no pet.) (mem. op.) (holding that evidence of one unexcused violation of a trial court's order was sufficient to support the trial court's subsection O finding); *see also In re S.J.R.-Z.*, 537 S.W.3d 677, 690 (Tex. App.—San Antonio 2017, pet. denied) ("Texas courts generally take a strict approach to subsection (O)'s application." (quoting *In re C.A.W.*, No. 01-16-00719-CV, 2017 WL 929540, at *4 (Tex. App.—Houston [1st Dist.] Mar. 9, 2017, no pet.) (mem. op.))).

Reviewing the evidence under the applicable standards, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Father failed to comply with the provisions of a court order establishing the actions necessary for him to obtain the return of his children. *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Having concluded the evidence is sufficient to support the trial court's finding under subsection O, we need not review the sufficiency of the evidence to support the subsection N finding. *See In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.) (explaining that an appellate court can affirm on any one predicate ground when also finding that termination is in a child's best-interest).

## BEST INTEREST

Father also challenges the legal and factual sufficiency of the trial court's best interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best interest analysis is also guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a firm conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a firm conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.* Evidence supporting the termination of parental rights under subsection 161.001(b)(1) is also probative of best interest. *Id.* at 28.

Here, the trial court's finding is supported by legally and factually sufficient evidence. The evidence shows Father did not comply with his service plan requirements. The caseworker testified, and Father agreed, that he failed to complete any of his court ordered services. *See In re A.M.S.*, No. 04-18-00973-CV, 2019 WL 2194067, at *6 (Tex. App.—San Antonio May 22, 2019, no pet.) (mem. op.) ("A parent's non-compliance with the court-ordered service plan is probative with regard to a best interest determination."); *see also In re I.L.G.*, 531 S.W.3d at 355–56 (pointing out that a parent's failure to comply with a court ordered service plan goes to the best-interest determination); TEX. FAM. CODE ANN. §§ 263.307(b)(10), (11). The investigator testified that Father failed to seek assistance on how to navigate his services virtually and that some programs, such as the one for his parenting classes, indicated they would have assisted Father if he had requested it. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and

personal changes within a reasonable period of time); *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *4 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of h[er] child that [s]he does not have the ability to motivate h[er]self to seek out available resources needed now or in the future." (quoting *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied))). Based on this testimony, the trial court could have reasonably determined that Father's failure to comply with his service plan requirements indicates that he did not have the motivation or willingness to take advantage of the services offered to him by the Department, casting doubt on his parenting abilities. *See In re I.L.G.*, 531 S.W.3d at 355–56; *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72.

The Department also presented evidence that Father had not had any contact with the children, other than several texts and phone calls through their paternal grandmother, since April 2020. A parent's lack of contact with the child supports a best interest finding. *See In re R.A.G.*, 545 S.W.3d 645, 654 (Tex. App.—El Paso 2017, no pet.).

Father's service plan required him to provide proof of employment and stable housing, which Father did not provide. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in a best interest determination." (internal citation omitted)); *see also In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (considering a parent's failure to obtain and maintain stable housing supportive of the trial court's best interest finding because the parent's conduct subjected her children to a life of uncertainty and instability). According to the testimony, when the case began, Father did not have housing, J.Y.G. was living with her paternal grandmother, and N.J.G. and T.A.G. were living in hotels with Mother. At the

time of trial, Father testified that he did not have housing and, when asked where he lived, he stated he was "between places." While Father stated that he was self-employed as a contractor and would give money to his mother, whom the children were living with, the caseworker testified that Father failed to provide proof of any income or employment. *See In re D.M.H.*, No. 04-19-00034-CV, 2019 WL 2518170, at *2 (Tex. App.—San Antonio June 19, 2019, no pet.) (mem. op.) (affirming best-interest determination and noting as to stability that the evidence included testimony that an unemployed parent relied on charitable organizations and family to pay her rent and living expenses).

Finally, the Department presented evidence that the children were thriving in their placement with their paternal grandmother. The caseworker testified that the children's paternal grandmother has provided for all of the children's needs, ensured that they were in school, and provided a safe environment for them. *See Holley*, 544 S.W.2d at 372 (considering plans for children by those seeking custody in best interest analysis); *see also* TEX. FAM. CODE ANN. § 263.307(b)(5) (providing that a court may consider whether the child is fearful of living in or returning to the child's home).

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in the best interest of T.A.G., J.Y.G., and N.J.G. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *Id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights was in the children's best interest. *See* TEX. FAM. CODE. ANN. § 161.001(b)(2).

**CONSERVATORSHIP**

We review the trial court's appointment of a nonparent as sole managing conservator for an abuse of discretion, and we will reverse that appointment only if we determine it is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Having determined the evidence is legally and factually sufficient to support the termination of Father's parental rights, we further hold the trial court did not abuse its discretion in appointing the Department as the managing conservator of the children. *See In re L.G.R.*, 498 S.W.3d at 207 (concluding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule Father's issue as to the conservatorship finding.

**CONCLUSION**

We affirm the trial court's order.

Rebeca C. Martinez, Chief Justice