**Affirmed and Majority and Concurring Opinions filed September 20, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00231-CV

## IN THE INTEREST OF I.L.G., A CHILD

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-01310J**

## MAJORITY OPINION

Mother appeals the trial court's final decree terminating her parental rights and appointing the Department of Family and Protective Services as sole managing conservator of her child, Isaac.[1] On appeal, Mother challenges the legal and factual sufficiency of the evidence to support the (1) predicate grounds under which her parental rights were terminated, (2) finding that termination was in the child's best interest, and (3) appointment of the Department as managing conservator. We affirm.

---

[1] We use pseudonyms to refer to appellant's child in this case. *See* Tex. Fam. Code

# FACTUAL AND PROCEDURAL BACKGROUND

## I.     Department history

In October 2015, the Department received a referral alleging neglectful supervision of Isaac by his 16-year-old Mother. According to the referral, police were called to the maternal grandmother's (Grandmother's) home because Grandmother's then-boyfriend was threatening Mother and Isaac with a bat and a gun. When law enforcement arrived, the boyfriend was gone, but the officers observed Mother punch Grandmother in the face multiple times. Isaac, who was three months old at the time, was in a car seat in another room at the time. Mother was arrested for assault family violence, and Isaac was left in the care of Grandmother. Grandmother reported that Mother had been "engaging in prostitution and hanging out with drug users."

Following the referral, a Department investigator met with Grandmother and Isaac at Grandmother's residence. Grandmother stated Mother was out of control, angry, and a habitual runaway. She further discussed the incident which led to Mother's arrest and overnight stay in jail. After being released, Mother left Grandmother's residence without permission and had not returned. Isaac remained in Grandmother's care.

Subsequently, the Department investigator spoke with Mother on the telephone. Mother acknowledged she was currently listed as a runaway. Additionally, Mother admitted to using marijuana. Approximately a week later, Mother called the Department investigator to say she was ready to return home. Grandmother was asked to pick up Mother. Grandmother stated she did not want Mother back in her home, but was informed she had no choice due to Mother's

§ 109.002(d); Tex. R. App. P. 9.8.

minority. The Department investigator went to Grandmother's residence, where Mother was upset and yelling. After approximately one hour, Mother was convinced to participate in Family Based Safety Services (FBSS) for anger, parenting, and counseling, and to participate in other programs deemed necessary for her to adjust to adult living.[2]

Mother did not complete all the recommended evaluations. In January 2016, FBSS received a call from Grandmother stating Mother had left her residence with Isaac. Mother called FBSS the same day and indicated she was staying with her aunt and would forward her aunt's address; however, she did not. Soon thereafter, FBSS received a phone call from someone concerned for Isaac because Mother's aunt was "pimping her out." FBSS was provided with the name and address of a hotel and attempted to contact Mother, but she was no longer there.

In February 2016, the Department received a new referral, alleging physical neglect of Isaac by his Mother. According to the referral, Mother had run away from home with Isaac to an unknown destination. The referral further stated that Isaac had been returned to Grandmother after a few days, but with no milk or diapers and with a runny nose. The referral stated Mother fed the child only Kool-Aid and Powerade.

The Department investigator was unable to make contact with Mother. Grandmother had no information as to Mother's location or contact information.

In March 2016, the Department filed its original petition for termination of the Mother's parental rights to Isaac.

## II.     Trial

Trial commenced on February 2, 2017. The following relevant evidence was

---

[2] On her drug assessment form, Mother wrote, "I don't have a family history of alcohol/drugs. I really don't know why I'm doing this."

admitted at trial: the return of citation; Isaac's birth certificate; search results from the Court of Continuing Jurisdiction Registry; the pretrial removal affidavit; an adversary hearing order; a status hearing order; family service plan; drug test orders and results; evaluation records; the child advocates' report; and the permanency plan and progress report.

## A.     Department caseworker

The Department caseworker testified that Isaac, who was eighteen months old, had been placed in a home where his cousins had been adopted. The placement was meeting his emotional and physical needs, and the caregivers wanted to adopt Isaac. The caseworker did not feel that it was safe to reunite Isaac with either parent.

The case initially was referred to the Department due to neglectful supervision. Mother completed some of the recommended services initially. Mother was drug tested during this time and tested positive for marijuana. After Isaac was removed and suit was filed, Mother was ordered to complete a service plan. She tested positive for marijuana and cocaine and failed to appear for an additional twelve ordered drug tests. At the time of trial, she had not completed several portions of her service plan.

Mother had a job at Wal-Mart. She had been visiting Isaac, and the visits were going well. Mother said she would like the child placed with her or Grandmother.

## B.     Child advocate

On behalf of Child Advocates, the child advocate recommended that Mother's parental rights be terminated because Mother had not completed her service plan or provided Isaac with a safe home. The child advocate concluded that Mother could not care for Isaac, pointing to Mother's drug use and admitted prostitution. Additionally, Isaac was bonding with his cousins in his current placement and being

4

well cared for. The child advocate agreed that the visits between Isaac and Mother had gone well.

## C.     Mother

Mother wanted Isaac placed with Grandmother while Mother's house was being repaired due to flood damage.[3] Mother indicated she would be able to take Isaac after she got a stable home. Mother requested the court not terminate her rights and instead allow her to work towards getting Isaac home.

Mother had been working 40 hours a week at Wal-Mart since October 2016. She felt she could provide a safe and stable home for Isaac once her home repairs were completed. Mother had recently taken a parenting course and previously undergone a psychological evaluation. Mother testified there was a communication problem with the current caseworker regarding scheduling other services.[4]

Mother testified she had used marijuana, but had never used cocaine. Her explanation of the positive cocaine test was "probably the people I be around." Mother stated she had stopped using marijuana, but estimated using marijuana ten times since Isaac was born.

## D.     Trial court's termination of parental rights

The trial court ordered that Mother's parental rights be terminated.[5] Mother's rights were terminated under Texas Family Code section 161.001(b)(1) subsections (E) (concerning endangerment of the child) and (O) (failure to comply with a service

---

[3] On appeal, Mother does not request placement with Grandmother.

[4] Mother testified: "They didn't let me know that [my previous psychological testing] expired and she haven't—when she said she called me for multiple drug tests, she haven't called me. 'Cause I check my voice mail. I haven't had no miss call from her. Even when I tried to call her, she doesn't answer."

[5] The termination of Isaac's father's parental rights is not before us on appeal.

plan).[6] The court signed a final decree memorializing its findings and appointing the Department as Isaac's sole managing conservator. In the final decree, the trial court found termination of Mother's rights was in Isaac's best interest.

## ANALYSIS

### I.       Burden of proof and standard of review

Parental rights can be terminated upon clear and convincing evidence that (1) the parent has committed an act described in section 161.001(b)(1) of the Family Code and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. *Id.*

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. *See* Tex. Fam. Code. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This

---

[6] The numbering of section 161.001 changed effective April 2, 2015. Section 161.001(1) is now section 161.001(b)(1). Although the trial court's judgment cites the previous version, Mother's case began after April 2, 2015 and is therefore governed by the current version. We refer to the current version in this opinion.

heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d at 358.

In reviewing the legal sufficiency of the evidence in a termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

## II. Predicate termination grounds

The trial court made predicate termination findings under subsections (E) and (O) of section 161.001(b)(1). Only one predicate finding under section 161.001 is

necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We begin by addressing the trial court's finding under section 161.001(b)(1)(O).

To terminate parental rights based on 161.001(b)(1)(O), a trial court must find by clear and convincing evidence that the parent

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code § 161.001(b)(1)(O).

Mother does not challenge the fact that Isaac was removed for abuse or neglect under Chapter 262 or that Isaac was in the Department's care for less than nine months. These unchallenged findings are binding on us "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *see In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (unchallenged findings of fact supported termination under section 161.001(1)(O) because record supported those findings).

The record supports each of the unchallenged findings. Isaac had been in the Department's care for almost eleven months at the time of trial. The evidence in support of removal included an affidavit by the Department caseworker. The affidavit stated Mother had physically assaulted Grandmother for which she was subsequently arrested. Additionally, Mother had run away from Grandmother's home after her release from jail, leaving Isaac in Grandmother's care. During the Department's investigation, Mother admitted to using marijuana. While

participating in FBSS, Mother again ran away from Grandmother's home. Subsequently, Mother's friend returned Isaac to the home, but with no milk or diapers. The Department was told Mother fed the child only Kool-Aid and Powerade. The pretrial removal affidavit shows what the trial court used in determining whether removal was justified. The trial court found "sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the child and for the child to remain in the home is contrary to the welfare of the child." The evidence and findings establish that Isaac was removed from Mother under Chapter 262 for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d at 248–49.

Mother contends she complied with the provisions of the family service plan. The record reflects that the court approved Mother's service plan and ordered compliance with its terms. *See* Tex. Fam. Code §§ 161.001(b)(1)(O); 263.101-.106. Mother's family service plan was admitted into evidence at trial. The service plan required Mother to participate in parenting classes; maintain monthly contact with Isaac through supervised visits; cease participation in criminal activity; establish and maintain stable housing and employment for at least six months; participate in a psychosocial evaluation and psychological evaluation and follow all recommendations; participate in a drug and alcohol assessment and follow all recommendations; and participate in individual counseling and follow all recommendations. The trial court also amended the family service plan to include the requirement of therapy to address domestic violence and family issues between Mother and Grandmother.

The evidence demonstrates that Mother did not complete all of the court-ordered services and tasks, which provides a basis for termination of her parental rights under subsection O. *See In re C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—

Houston [14th Dist.] 2008, no pet.). For example, the record reflects that Mother had not completed the substance abuse assessment and recommendations or psychological evaluation and recommendations, or shown stable housing and employment for six months. Additionally, there is no evidence that Mother completed the required therapy. Further, the evidence establishes that Mother tested positive for marijuana and cocaine and failed to take other ordered drug tests.

Mother contends she completed her psychological evaluation and psychosocial evaluation. The record shows Mother underwent a psychosocial assessment while the case was being handled by FBSS, prior to the Department filing suit. The record further shows that assessment had expired as Mother did not timely follow through with the recommendations resulting from the assessment. Additionally, there is evidence in the record that Mother completed a substance abuse assessment during FBSS. The evidence reflects that Mother did not complete the recommendations resulting from the assessment. The court-ordered services and tasks included completing another psychological evaluation, psychosocial evaluation, and substance abuse assessment, which the record reflects Mother did not do.

Even if the completion of the assessments during the FBSS period were sufficient to comply with the court-ordered services and tasks, this would only be partial compliance. The record does not reflect that Mother completed the recommendations following the assessments. Accordingly, Mother failed to follow these court-ordered services and tasks through completion. Sporadic incidents of partial compliance with a court-ordered family service plan do not justify reversing a termination order when the parent also violated material provisions of the same family service plan. *See In re J.F.C.*, 96 S.W.3d at 278.

Reviewing the evidence under the appropriate standards, we conclude the

evidence is legally and factually sufficient to support a finding that Mother failed to comply with the provisions of the court order establishing the actions necessary for her to obtain the return of Isaac as set out in section 161.001(b)(1)(O). Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection O, we need not review the sufficiency of the evidence to support the subsection E finding. *See In re A.V.*, 113 S.W.3d at 362. We overrule Mother's first and second issues.

## III. Best interest

Termination must be in the child's best interest. Tex. Fam. Code § 161.001(b)(2). There is a strong presumption that the best interest of a child is served by keeping the child with the child's parent. *Id*. § 153.131(b); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt, permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding: the desires of the child; the physical and emotional needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parent's willingness and ability to provide the child with a safe environment). As noted, this

list of factors is not exhaustive, and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Mother contends termination of her parental rights was not in the best interest of Isaac. The Department contends the evidence supported the trial court's findings under subsections E and O and that the same evidence also supports the trial court's best-interest finding. Additionally, the Department contends that Mother's failure to engage in offered rehabilitative services supported the trial court's best-interest finding. The Department also contends the evidence established that Isaac's placement would provide him safety, stability, and permanency and supported the best-interest finding.

Evidence supporting termination under one of the grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the best interest of the child. *In re S.R.*, 452 S.W.3d at 366. Accordingly, the evidence that Mother failed to complete her service plan, for purposes of subsection O, is relevant to the best-interest analysis.

## A. Physical and emotional danger

To "endanger" means to expose the child to loss, injury, or danger. *K.H. v. Tex. Dep't of Family and Protective Servs.*, No. 03-11-00560-CV, 2012 WL 1959370, at *1 (Tex. App.—Austin June 1, 2012, no pet. h.) (mem. op.) (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). The endangering conduct does not have to occur in the presence of the child. *Id.* The Department contends the evidence of Mother assaulting Grandmother, fleeing with Isaac, and using illegal drugs supports the trial court's best-interest determination.

We consider in particular, under the facts of this case, Isaac's age and mental

vulnerabilities. *See* Tex. Fam. Code § 263.307(b)(1), (12). When Mother left Grandmother's home, Mother had run away from home with Isaac to an unknown destination. Isaac, who was seven months old at the time, was returned by a friend to Grandmother with no milk or diapers, and was reported to have been fed only Kool-Aid and Powerade by Mother.

Additionally, a parent's drug use supports a finding that termination is in the best interest of the child. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The fact finder can give "great weight" to the "significant factor" of drug-related conduct. *Id*. The record contains evidence of Mother's drug use and Mother's failure to take ordered drug tests.

## B.    Stability and compliance with services

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d at 249. The caseworker testified that Mother failed to complete her family service plan. Although mother contends she completed some services of the plan, as discussed herein, the evidence established that she did not fully complete the plan. Mother's excuse for the failure to complete the service plan was poor communication with the Department caseworker. We note the fact finder had discretion to determine the weight and credibility of Mother's testimony. *See In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied). We may not disturb the fact finder's resolution of credibility issues. *See In re H.R.M.*, 209 S.W.3d at 108; *In re L.M.I.*, 119 S.W.3d at 712.

Mother's failure to complete the court-ordered service plan demonstrates that she is unwilling to take advantage of the services offered to her by the Department and casts doubt on her parenting abilities. *See In re M.S.D.*, No. 14-12-00801-CV,

13

2013 WL 593444, at *13 (Tex. App.—Houston [14th Dist.] Feb. 14, 2013, no pet.) (mem. op.); Tex. Fam. Code § 263.307(b)(10), (11).

## C. The stability of the proposed placement

Isaac was very young at the time of trial, and there is no evidence of his desires. When a child is too young to express his desires, the fact finder may consider whether the child has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The child advocate testified that Isaac was bonding with his cousins and being well cared for in his current placement. Additionally, the Department caseworker testified that the current caregivers want to adopt Isaac.

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See id.* at 119–20. A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best-interest determination. *Id.* ("Stability and permanence are paramount in the upbringing of children."). Therefore, evidence about the present and future placement of the child is relevant to the fact finder's best interest determination. *See In re C.H.*, 89 S.W.3d at 28. The record reflects that Isaac's placement is stable and meeting his needs.

Considering all of the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of mother's rights is in the best interest of Isaac. Accordingly, we overrule Mother's third issue.

## IV. Conservatorship

In her fourth issue, Mother contends the trial court erred in naming the

14

Department as managing conservator of Isaac. We review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

A parent shall be named a child's managing conservator unless, as relevant here, the court finds that such appointment would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code § 153.131(a). Although the trial court made this finding,[7] when the parents' rights are terminated, as here, section 161.207 controls the appointment of a managing conservator. *In Interest M.M.M.*, No. 01-16-00998-CV, 2017 WL 2645435, at *17 (Tex. App.— Houston [1st Dist.] June 16, 2017, no pet.) (mem. op.). Section 161.207 states, "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court *shall* appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code § 161.207(a) (emphasis added). Having terminated both parents' rights, the trial court was required to appoint the Department or another permissible adult or agency as Isaac's managing conservator. *See In re L.G.R.*, 498 S.W.3d at 207. The appointment may be considered a "consequence of the termination." *Id.*

We have concluded the evidence supporting Mother's termination was legally and factually sufficient under section 161.001(b). Accordingly, section 161.207 controls. We conclude the trial court did not abuse its discretion in appointing the Department as sole managing conservator of Isaac. *See In re L.G.R.*, 498 S.W.3d at 207. We overrule Mother's fourth issue.

---

[7] The trial court also found that appointing the Department as Isaac's sole managing conservator was in his best interest.

## CONCLUSION

Having overruled Mother's issues presented on appeal, we affirm the trial court's judgment.


/s/      Martha Hill Jamison
         Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby. (Frost, C.J., concurring).