**Affirmed and Memorandum Opinion filed August 17, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-23-00139-CV
_____

## IN THE INTEREST OF N.W., A CHILD

_____

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-00205J**

_____

## M E M O R A N D U M   O P I N I O N

The trial court signed a Decree of Termination terminating Mother's and Father's parental rights with respect to their one-year-old son, N.W. ("Nick").[1] Mother appeals the decree and challenges the trial court's predicate termination findings under Texas Family Code sections 161.001(b)(1)(D), (E), (O), and (P). Mother also challenges the trial court's finding that termination of her parental rights is in Nick's best interest and its appointment of the Texas Department of Family and Protective Services (the "Department") as Nick's sole managing conservator.

_____

[1] We refer to N.W. using a pseudonym. *See* Tex. Fam. Code Ann. § 109.002(d).

For the reasons below, we overrule Mother's issues on appeal and affirm the trial court's Decree of Termination.

## BACKGROUND

Nick was born on February 3, 2022; four days later, the Department filed an original petition seeking to terminate Mother's and Father's parental rights. The Department also requested that it be appointed Nick's sole managing conservator.

The parties proceeded to a bench trial in January 2023.[2] We summarize relevant portions of the witnesses' testimony and evidence below.

### *Britney Jones*

Jones is a Department caseworker and, at the time of trial, had been assigned to Nick's case for 11 months. Jones said Nick "came into care due to Mom and [Nick] testing positive for amphetamines at birth." Jones testified that Nick did not have any withdrawal symptoms at birth nor has he had any development delays. Jones said Nick was placed with a foster family shortly after his birth.

Jones said a family service plan was created for Mother in March 2022, which prescribed the following services: psychosocial assessment, parenting classes, substance abuse assessment, psychiatric assessment, individual counseling, and random drug testing. The service plan also required Mother to show proof of housing and proof of income.

According to Jones, Mother did not complete her psychosocial assessment until October 2022, which delayed the start of her individual counseling. Jones said Mother was referred to individual counseling shortly thereafter and began

---

[2] Father did not appear at the bench trial nor did he contest the Department's request that his parental rights be terminated. Likewise, Father did not appeal the trial court's judgment terminating his parental rights.

counseling in December 2022. Jones testified that Mother needed to complete 14 individual counseling sessions and, at the time of trial, had completed three.

Jones said Mother completed her substance abuse assessment in April 2022 but, "due to the lapse in time" between the assessment and entering the program, Mother had to take a second substance abuse assessment in October 2022. According to Jones, Mother was subsequently referred to a substance abuse program and has completed four out of the 13 recommended sessions. Jones said Mother has been consistently drug tested and tested positive in August 2022 for methamphetamines and cocaine.

Jones said Mother was referred to parenting classes in March 2022 but, as of the time of trial, had not started the classes. Jones testified that it is not possible for Mother to complete her prescribed services by the end of February 2023.

According to Jones, Mother has visited Nick consistently aside from "a month of just no-shows for April [2022]." Jones testified that the visits have been "appropriate" and described Mother as "nurturing," "caring," and "attentive." Jones said there is "a bond" between Mother and Nick and said Mother is "very open," "loves her baby," and "has a will[] to at least try."

Discussing Mother's current living situation, Jones said Mother is subleasing an apartment "from a male friend" and is not working. Jones testified that Mother gave birth to a new baby on January 5, 2023. Jones said there is an "open investigation" into Mother's care of her newborn child and stated that Mother's August 2022 positive drug test indicates that Mother again was using drugs while pregnant. The newborn child currently resides with Mother.

Jones said Mother also has three older children who are not in her care. According to Jones, "drugs were involved" in the two older children's Department

3

cases and Mother "was incarcerated" during the other child's case.

Discussing Nick's current living situation, Jones said he has "bonded" to his foster family. Jones said Nick's foster mother and foster father both work and, during the day, Nick is in daycare. According to Jones, Nick "is thriving and doing well in his placement." Jones said the foster family wants to adopt Nick. In sum, Jones recommended that Mother's parental rights with respect to Nick be terminated.

### *Mother*

When asked about the delay in completing her services, Mother testified as follows:

> Like in the beginning — like I explained to [the caseworkers], I got my son taken away. I know I made a mistake, but two days out of the hospital, I'm supposed to get out and start services, you know, it's like it's not that easy to just go through a situation [as] traumatizing as that. I know I made a mistake, but my son wasn't having withdrawals and was taken out for my son to be seen and stuff like that, so I made a mistake, you know, but I was supposed to just snap back into it. I ended up going through a lot of depression. I had post-partum. And then, in May, I ended up getting on Zoloft which is like this — like if I could sleep 27 hours, I would have. That's why I missed my couple of sessions with [Nick] in April and I just went through a lot of depression. I know I made a mistake, but I'm trying now to get everything together.

Mother said she currently lives in a two-bedroom, two-bathroom apartment. According to Mother, she recently started working again and is employed by a painting company. Mother said her job includes doing payroll and other tasks that can be completed at home.

When asked about the August 2022 drug test that was positive for cocaine and methamphetamines, Mother said she did not use these substances. Mother said

"maybe there was a mix-up" because she was not on drugs and passed all her other drug tests. Mother said the last time she took a controlled substance was approximately one month before Nick was born; Mother said she only took Adderall.

Mother requested that her parental rights not be terminated. Mother said she will be diligent about completing her services and can do so by the end of February 2023.

### Presley Lundquist

Lundquist is the Child Advocate assigned to Nick's case. Lundquist recommended that Mother's parental rights be terminated and that Nick be adopted by his foster family.

Lundquist said Nick is doing "well" and that his foster family has been providing appropriate care. Describing Nick's foster family, Lundquist said they are "nurturing," "affectionate," and have provided Nick with "a stable life." When asked why Mother's parental rights should be terminated, Lundquist said: "Just because of his young age and vulnerability, the mother's history of substance abuse and the lapse in time to complete her services given."

### Exhibits

The trial court admitted into evidence the affidavit of removal completed by Department caseworker Teannia Peavy, which was dated four days after Nick's birth. The affidavit states that the investigation was initiated after Mother and Nick both tested positive for amphetamines shortly after his birth. The affidavit also states that Mother tested positive for drugs during her pregnancy. According to Peavy, Mother "stated she has not been doing any type of drugs" when asked about the positive drug screenings.

The affidavit also states that Mother got into a fight with her brother two weeks before Nick's birth. Mother said her brother "pushed her in the tub" and "told her that he 'hopes her and her baby die.'" Mother also asserted that she "believed that her brother [] put something in her food because he uses methamphetamine[s]."

According to Peavy, Mother "made it clear" that she wanted Nick to live with her. Mother also stated that she did not want to attend a substance abuse rehabilitation facility. Mother provided the name of a friend who could watch her and Nick "24 hours a day" once she was discharged from the hospital. But Peavy stated that, after she spoke to the friend, the friend informed her that Mother "wanted [her friend] to lie to CPS." The friend stated that Mother "needs help with mental health issues and her drug addiction," but said she was unable to watch Mother and Nick because she worked a full-time job. The friend also asked Peavy to not inform Mother of her statements because she was concerned how Mother "would act towards her."

The affidavit also shows that Mother has been convicted of the following offenses:

- 2010: Possession of marijuana less than 2 ounces, a class B misdemeanor.
- 2011: Prostitution, a class B misdemeanor.
- 2011: Assault of a public servant, a third-degree felony.
- 2015: Driving while intoxicated, a class B misdemeanor.
- 2021: Driving while intoxicated, a class A misdemeanor.

The last listed offense occurred while Mother was pregnant with Nick.

Also admitted into evidence was a criminal complaint charging Mother with assault of a family member. The complaint states that, on July 24, 2022, Mother

6

"intentionally and unlawfully caused bodily injury to [Complainant] . . . by biting the Complainant with Defendant's teeth and pushing the Complainant with Defendant's hand."

Finally, the trial court also admitted into evidence a December 2022 permanency report that detailed Mother's progress on her family service plan. According to the report, Mother "continue[d] to set appointments with providers and then is a no call/no show and then [she] reschedules and does it again. Provider[s] have mentioned not wanting to work with mom due to this issue[.]" The report also states that Mother was pregnant with her fifth child and "mentioned that she is thinking about having her new baby out of state to not be involved with CPS."

The permanency report also details the results from Mother's substance abuse drug screenings. The report shows that Mother completed 20 drug screenings from February 2022 through November 2022. Seventeen of the drug screenings were negative; Mother was a no-show for the April and July tests. Mother tested positive for methamphetamines and cocaine at the August screening.

### Conclusion

The trial court signed a Decree of Termination on February 7, 2023, terminating both Mother's and Father's parental rights with respect to Nick.

The trial court found that termination of Mother's parental rights was in Nick's best interest and was justified under four subsections of section 161.001(b)(1) of the Texas Family Code: (D) (endangerment by environment), (E) (endangerment by conduct), (O) (failure to comply with family services plan), and (P) (endangering substance abuse even after court-ordered treatment). The trial court appointed the Department as Nick's sole managing conservator. Mother

timely appealed.

Mother raises six issues on appeal, which we consolidate as follows:

1. the trial court's predicate findings under Texas Family Code sections 161.001(b)(1)(D), (E), (O), and (P) are not supported by legally and factually sufficient evidence;

2. the trial court's best interest finding is not supported by legally and factually sufficient evidence; and

3. the trial court abused its discretion by appointing the Department as Nick's sole managing conservator.

We begin with the applicable burdens of proof and standards of review before turning to Mother's first issue.

## I. Burdens of Proof and Standards of Review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re J.E.M.M.*, 532 S.W.3d 874, 879 (Tex. App.—Houston [14th Dist.] 2017, no pet.). But although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Given the fundamental liberty interests at stake, "termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20.

Parental rights may be terminated if clear and convincing evidence shows (1) the parent committed an act described in section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

8

§ 101.007.

This heightened burden of proof results in heightened standards of review for evidentiary sufficiency. *In re V.A.*, 598 S.W.3d 317, 327 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). For a legal sufficiency challenge, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all controverting evidence a reasonable factfinder could disbelieve. *Id.*

For a factual sufficiency challenge, we consider and weigh all the evidence, including disputed or conflicting evidence, to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re C.H.*, 89 S.W.3d at 25. We examine whether disputed evidence is such that a reasonable factfinder could not have resolved that dispute in favor of its finding. *Id.*

The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). "We may not second-guess the factfinder's resolution of a factual dispute by relying on disputed evidence or evidence the factfinder 'could easily have rejected as not credible.'" *In re V.A.*, 598 S.W.3d at 328 (quoting *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003)).

## II.    Predicate Termination Findings

Mother asserts the evidence is legally and factually insufficient to support the trial court's finding that termination is warranted under four subsections of

section 161.001(b)(1) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (P).

"To affirm a termination judgment on appeal, a court need uphold only one termination ground — in addition to upholding a challenged best-interest finding — even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). Predicate findings under subsections (D) and (E), however, pose significant collateral consequences. *See id.* at 234, 235 (discussing section 161.001(b)(1)(M), which provides that a court may terminate a parent's rights if it finds, by clear and convincing evidence, that the parent has had his "parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)"). In light of these consequences, we are required to consider the sufficiency of the evidence pursuant to subsections (D) or (E) when raised on appeal. *Id.* at 235; *see also*, *e.g.*, *In re P.W.*, 579 S.W.3d 713, 721, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## A.     Subsection (E)

Subsection (E) allows for termination of parental rights if clear and convincing evidence supports a conclusion that the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" means to expose the child to loss or injury or to jeopardize the child's emotional and physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). For purposes of this section, "conduct" refers to the parent's acts, omissions, and failures to act. *In re K.J.B.*, No. 14-19-00473-CV, 2019 WL 5704317, at *7 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, pet. denied) (mem. op.).

While endangerment often involves physical endangerment, the statute does

not require that conduct be directed at a child or that the child actually suffer injury. *In re V.A.*, 598 S.W.3d at 331. Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.L.H.*, 515 S.W.3d 60, 92 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re S.R.*, 452 S.W.3d at 361. A court may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re V.A.*, 598 S.W.3d at 331.

A parent's continuing substance abuse can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Additionally, a factfinder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates that the parent was avoiding testing because the parent was using illegal drugs. *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A parent's drug use exposes the child to the possibility the parent may be impaired or imprisoned and, thus, unable to take care of the child. *In re V.A.*, 598 S.W.3d at 331. But a parent's illegal drug use is not, on its own, sufficient evidence of endangerment; there also must be a showing of a causal connection between the parent's drug use and endangerment of the child. *In re L.C.L.*, 599 S.W.3d 79, 84-86 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc).

Similarly, incarceration of a parent alone will not support termination; but evidence of past and continuing endangering criminal conduct, convictions, and imprisonment may support a finding of endangerment. *See In re C.A.B.*, 289 S.W.3d 874, 886 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Likewise, "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Here, the record establishes a voluntary, deliberate, and conscious course of conduct by Mother that endangered Nick's emotional and physical well-being. As shown by the summary of evidence and witness testimony at trial, Mother has a lengthy history of substance abuse. Approximately five months before Nick's birth, Mother was arrested for driving while intoxicated, second offense. When Nick was born, both he and Mother tested positive for amphetamines. According to Peavy's affidavit, Mother also tested positive for drug use during her pregnancy with Nick. But despite these positive tests, Mother denied using drugs and refused to attend a substance abuse rehabilitation facility after Nick's birth.

The evidence shows that this pattern of substance abuse continued after Nick was placed with his foster family. Mother was a no-show at her April and July 2022 drug screenings. *See In re E.R.W.*, 528 S.W.3d at 265 (the factfinder may infer from a missed drug screening that the parent was avoiding testing because she was using illegal drugs). Mother also tested positive for methamphetamines and cocaine at her August 2022 drug screening. According to caseworker Jones, at the time of trial there was an "open investigation" into Mother's care of her newborn child because Mother's August 2022 positive drug test indicates she again was using drugs while pregnant. Mother also has two older children that are not in her care because "drugs were involved" in the children's Department cases.

The record also shows that Mother has a lengthy criminal history. Since 2010, Mother has been convicted of possession of marijuana, prostitution, assault of a public servant, and two counts of driving while intoxicated. At the time of trial, a criminal complaint charged mother with assault of a family member that occurred in July 2022 — five months after Nick was removed from her care. The removal affidavit also states that Mother had an altercation with her brother shortly before Nick's birth, during which her brother "pushed her in the tub" and "told her that he 'hopes her and her baby die.'" Mother also opined that her brother was possibly put[ting] something in her food because he uses methamphetamine."

Finally, the evidence shows that Mother has not been totally forthcoming in her interactions with Department caseworkers. Shortly after Nick's birth, Mother provided the name of a friend that could assist her and Nick "24 hours a day." But when caseworker Peavy talked to the friend, the friend informed Peavy that Mother "wanted [her friend] to lie to CPS" about her ability to care for Mother and Nick. The friend also asked Peavy to not inform Mother of her statements because she was concerned about how Mother "would act towards her." Mother also said she wanted to have her fifth child out of state so she would "not be involved with CPS." These interactions suggest a pattern of duplicitous behavior that could endanger Nick if he was returned to Mother's care.

In sum, this evidence of Mother's substance abuse, criminal and domestic violence history, her relationship with Nick, her relationships with her other children, and her dealings with the Department constitute legally and factually sufficient evidence to support the trial court's subsection (E) finding. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). We overrule Mother's challenge to the trial court's predicate finding under this subsection.

Because we conclude the evidence is sufficient to support termination under

subsection (E), we need not address the trial court's finding pursuant to subsection (D).  *See In re N.G.*, 577 S.W.3d at 232; *see also, e.g.*, *In re P.W.*, 579 S.W.3d at 728.   Likewise, we need not address Mother's challenges to the trial court's findings pursuant to subsections (O) and (P).  *See In re N.G.*, 577 S.W.3d at 232-33.  We therefore overrule the remainder of Mother's first issue.

## III.       Best Interest Finding

In her second issue, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in Nick's best interest.

Termination must be in the child's best interest.  Tex. Fam. Code Ann. § 161.001(b)(2).  There is a strong presumption that the best interest of a child is served by keeping the child with the child's parent.  *Id*. § 153.131(b); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).  Prompt, permanent placement of the child in a safe environment also is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the trial court's best-interest finding:  the desires of the child; the physical and emotional needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions.  *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in

14

evaluating parent's willingness and ability to provide the child with a safe environment). This list of factors is not exhaustive and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re I.L.G.*, 531 S.W.3d 346, 355 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Evidence supporting termination under one of the predicate grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the child's best interest. *In re S.R.*, 452 S.W.3d at 366. Accordingly, the evidence showing conduct by Mother that endangered Nick's emotional and physical well-being, for purposes of subsection (E), is relevant to our best-interest analysis.

### The Child's Desires

Nick was 11-months old at the time of trial and was too young to testify or verbally express his desires. In these circumstances, the factfinder may consider that the child has bonded with the foster family, is well cared for by the foster family, and has spent minimal time with the parent. *See In re L.G.R.*, 498 S.W.3d at 205.

These conclusions are supported by the record. Nick was removed from Mother's care shortly after his birth and lives with his foster family. Jones said Nick is "bonded" to his foster family and is "thriving and doing well in his placement." According to Jones, the foster family wants to adopt Nick. Lundquist provided similar testimony regarding Nick's foster family and said they are "nurturing," "affectionate," and have provided Nick with "a stable life." The trial court reasonably could have weighed this evidence in favor of terminating Mother's parental rights.

***The Physical and Emotional Danger to Nick Now and in the Future***

With respect to this factor, "a parent's drug use supports a finding that termination is in the best interest of the child." *In re L.G.R.*, 498 S.W.3d at 204; *see also In re I.L.G.*, 531 S.W.3d at 355 ("The factfinder can give great weight to the significant factor of drug-related conduct.") (internal quotation omitted).

We detailed above Mother's history of substance abuse both before and after Nick's birth. *See In re A.M.T.*, No. 14-18-01084-CV, 2019 WL 2097541, at *8 (Tex. App.—Houston [14th Dist.] May 14, 2019, pet. denied) (mem. op.) ("Continued drug use may be considered as a factor in the trial court's determination that termination is in the child's best interest."). The evidence also shows that Mother has not taken any of the steps recommended to help with these issues. Mother denied using drugs, refused to attend a substance abuse facility after Nick's birth, and, as of the time of trial, had not completed the substance abuse program prescribed by her family service plan. Considered in conjunction with Mother's history of substance abuse, this evidence would permit the trial court to conclude that returning Nick to Mother's care would risk physical and emotional danger to him now and in the future.

Mother also has a history of engaging in criminal conduct and domestic violence. We discussed above Mother's criminal history, which included an arrest for driving while intoxicated while she was pregnant with Nick. After Nick was removed from Mother's care, she was charged with assault of a family member. This evidence also supports the finding that returning Nick to Mother's care would risk physical and emotional danger to him now and in the future.

***Nick's Physical and Emotional Needs Now and in the Future***

As discussed above, the evidence shows that Nick's foster family is meeting

his current physical and emotional needs. The evidence also suggests that this level of care will continue into the future. Lundquist said Nick's foster family has provided him with "a stable life." According to Jones, Nick's foster father and foster mother both have jobs and, during the day, Nick is in daycare. Jones said Nick's foster family wants to adopt him.

In contrast, the evidence suggests Mother's home life is less stable. Mother gave birth to her fifth child approximately two weeks before trial and, as Jones explained, there currently is an "open investigation" with respect to this child due to Mother's August 2022 positive drug screening. Mother expressed that she thought about "having her new baby out of state to not be involved with CPS," a course of conduct that suggests she is not putting her children's needs first.

Moreover, Mother did not complete the services prescribed in her family service plan, which included individual counseling, a substance abuse program, and parenting classes. *See In re I.L.G.*, 531 S.W.3d at 355 ("In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child.").

This evidence would permit the trial court to conclude that returning Nick to Mother's care would not best serve his physical and emotional needs.

### *Parent's Acts or Omissions That Suggest the Existing Parent-Child Relationship is Not Appropriate and Any Excuses for Those Acts or Omissions*

We have discussed above Mother's pattern of substance abuse. Mother did not provide any excuses for these actions nor did she take responsibility for them. When asked at trial why she tested positive for amphetamines at the time of Nick's birth, Mother said: "I was like I didn't know what — maybe somebody did something or what because I didn't realize." Mother suggested she tested positive

17

for amphetamines because she took Adderall. When asked about her August 2022 positive drug screening for cocaine and methamphetamine, Mother denied using drugs and stated that she had been "completely drug free this entire case." This evidence, combined with Mother's failure to complete the family service plan, suggests that Mother is not at a point where she is ready to take responsibility for her actions and follow-through with a prescribed course of treatment. Accordingly, this evidence would permit the trial court to reasonably conclude that returning Nick to Mother's care would not be in his best interest. This conclusion is particularly appropriate since Mother continued to engage in endangering conduct after Nick was removed from her care, including substance abuse and domestic violence.

### *Conclusion*

Viewing the evidence in the light most favorable to the judgment for our legal sufficiency analysis and all the evidence equally for our factual sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in Nick's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We overrule Mother's second issue.

## IV. Sole Managing Conservatorship

In her third issue, Mother asks that we remove the Department as Nick's sole managing conservator. We review the trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

A parent shall be named a child's managing conservator unless, as relevant

here, the court finds that the appointment of a parent would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code Ann. § 153.131(a). Although the trial court made this finding with respect to Mother, when the parents' rights are terminated, as here, section 161.207 controls the appointment of a managing conservator. *In re I.L.G.*, 531 S.W.3d at 356-57. Section 161.207 states, "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the [Department], or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code Ann. § 161.207(a). Accordingly, having terminated both Mother's and Father's parental rights, the trial court was required to appoint the Department or another permissible adult or agency as Nick's managing conservator. *See In re I.L.G.*, 531 S.W.3d at 357. The appointment may be considered a "consequence of the termination." *Id.*

We have concluded the evidence supporting Mother's termination is legally and factually sufficient under section 161.001(b). Accordingly, section 161.207 controls. We conclude the trial court did not abuse its discretion in appointing the Department as Nick's sole managing conservator. *See id.* We overrule Mother's third issue challenging the appointment of the Department as Nick's sole managing conservator.

## CONCLUSION

Legally and factually sufficient evidence supports the trial court's predicate termination finding with respect to Mother under subsection 161.001(b)(1)(E). The trial court's best interest finding also is supported by legally and factually sufficient evidence. Finally, the Department did not abuse its discretion by appointing the Department as Nick's sole managing conservator. Therefore, we overrule Mother's issues on appeal and affirm the trial court's Decree of

19

Termination.

/s/ Meagan Hassan
Justice

Panel consists of Justices Jewell, Hassan, and Wilson.