

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00070-CV

**IN THE INTEREST OF A.M.V.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00119
Honorable Raul Perales, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Lori Massey Brissette, Justice
               H. Todd McCray, Justice

Delivered and Filed: May 28, 2025

AFFIRMED

Appellant A.G. appeals the trial court's order terminating her parental rights to her child, A.M.V.[1] She argues the evidence is legally and factually insufficient to support the trial court's best interest finding. Because we conclude the evidence is legally and factually sufficient, we affirm.

### PROCEDURAL FACTS

After confirming allegations of domestic violence between A.G. and the father of A.M.V.,[2] and being unable to establish a safety plan for the parents, the Texas Department of Family and

---

[1] To protect the identity of the minor child in this appeal, we refer to the child by her initials and to appellant by her initials or by "Mother." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[2] Father's rights were terminated as well, but he does not challenge the termination on appeal.

Protective Services ("the Department") initiated emergency removal proceedings on January 24, 2024, seeking temporary managing conservatorship of the child, A.M.V., and termination of both parents' parental rights. At the time, A.M.V., who was born premature, was just over one month old and still in NICU. On February 7, 2024, the trial court signed an order naming the Department temporary sole managing conservator of the children. The Department then created a family service plan for A.G. The plan required A.G. to establish a safe and appropriate home, obtain stable employment, complete domestic violence and parenting classes, complete a psychological evaluation and follow all recommendations, engage in individual counseling, comply with requests for random drug screens, and attend visits with the child.

In January 2025, the case proceeded to a bench trial wherein the Department sought termination of parental rights for both Mother and Father. The trial court heard testimony from three witnesses, including the Department's legal caseworker, Mother, and the foster mother. The trial court ultimately ordered A.G.'s parental rights terminated based on statutory grounds (D), (E), (N) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE §§ 161.001(b)(1)(D) (knowingly placed or allowed child to remain in conditions which endanger physical or emotional well-being), (E) (engaged in conduct or knowingly placed child with persons who engaged in conduct which endangers physical or emotional well-being), (N) (constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months), and (O) (failure to comply with court-ordered service plan). It further found termination of A.G.'s parental rights was in the children's best interest. *See id*. § 161.001(b)(2). A.G. now appeals but does not challenge the grounds for termination under Texas Family Code section 161.001(b)(1). Instead, A.G. only contests the trial court's finding that termination is in the best interest of the child.

## STANDARD OF REVIEW

An order terminating parental rights must be supported by clear and convincing evidence showing (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the child's best interest. *See id*. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *J.F.C.*, 96 S.W.3d at 264. To determine whether this heightened burden of proof was met, we use a heightened standard of review to decide whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *see, e.g.*, *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *O.N.H.*, 401 S.W.3d at 683.

A legal sufficiency review of the evidence requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). We assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). We do not disregard undisputed evidence even if it does not support the trial court's finding; to do

so would not comport with the heightened burden of proof by clear and convincing evidence. *Id*. (citing *J.F.C.*, 96 S.W.3d at 266).

Under a factual sufficiency review, we perform "an exacting review of the entire record" and consider disputed or conflicting evidence. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014); *J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.O.A.*, 283 S.W.3d at 345 (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). Under both standards, the factfinder is the sole judge of the weight and credibility of the evidence. *See id*. at 346; *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam).

## TRIAL TESTIMONY

Mother and Father have a long history with the Department. Mother testified she has had a child almost every year since she was 18 years old, all by the same father. Their rights were terminated as to the children born prior to A.M.V. and the last child, born in December of 2024—just a month before trial in this matter—has been removed and is placed in the same foster home as A.M.V. All of the state interventions have been based on the allegation that Mother and Father are engaged in a relationship involving domestic violence and that Father has a substance abuse problem. Father admitted he has used marijuana, cocaine, xanax, ice and meth since he was 12 years of age.

Mother did not accept the Department's offer to place her in a domestic violence shelter and testified at trial that there was no domestic violence between her and the child's father and there never has been. But the evidence showed that Father was incarcerated during the pendency of the underlying proceeding for threats and assault/bodily injury against Mother. The information

about his incarceration came through the testimony of the Department's caseworker because Mother stated, in response to a question as to why Father was incarcerated, that she forgot. Mother also testified that she and Father broke up before he went to jail and are no longer in a relationship. But she admitted that he was present at the hospital when their latest child was born in December 2024, just a month before trial. The legal caseworker testified that, while A.G. was somewhat compliant with services offered by the Department, she seemed to disappear once Father was released from jail. She testified that Mother and Father were living together in a motel as late as October of 2024, but were kicked out due to complaints about screaming between the two of them. Finally, the caseworker testified that the last incident of domestic violence between Mother and Father occurred in November of 2024, just two months before trial. "He was choking her to the point where she was passing out, and he was also beating her." Given the trial court is in a better position to judge the credibility of the witnesses, we assume the trial court chose to believe the Department's testimony over Mother's and to resolve that conflict in favor of the trial court's determination of best interest. *J.O.A.*, 283 S.W.3d at 346.

In terms of her living arrangements, Mother testified she moves among three places—her mother's, her brother's, and her cousin's. The caseworker testified that Mother lived in various motels for most of the year, while the case was pending. She also testified that A.G.'s mother lives with her brother and that A.G. was living with an aunt until Father was released from jail and the aunt would no longer host her because of her relationship with Father. Mother refused to provide to the Department the address of any location at which she stayed except for her brother's home.

Mother testified that she has been on the waiting list for housing assistance for over seven years. But, in order to get housing assistance, she needs to have a job. In order to get a job, she agrees she must address her mental health. But, at the time of trial, while she had completed the

requested psychological evaluation in November of 2024 (ten months after the child was removed), she had not yet followed up to seek treatment for her depression and anxiety and had not sought out a counselor to continue individual therapy. She testified that she had an appointment scheduled for the day after the final trial. But she also testified that she stopped going to individual therapy because the therapist told her she had too many patients, while the caseworker testified that Mother simply stopped attending therapy sessions and had failed to follow up on the recommendations set forth in the evaluation. Again, we defer to the trial court's determination of the credibility of Mother's testimony when it is in conflict with that of the Department. *In re J.O.A.*, 283 S.W.3d at 346.

The child, A.M.V., was born premature and was in NICU for two months, moving straight to the foster-to-adopt home she is currently in upon her discharge from the hospital. She sees an occupational therapist and an early intervention specialist four times a month and is scheduled for a tongue tie revision, all of which the foster mother handles. She is bonded with foster mother and has her baby sister with her in the same foster home.

According to the caseworker, A.M.V. is not bonded with her mother A.G. Furthermore, A.G. has attended only 25 out of 47 visits with the child. After many incidents where A.G. would text or call to say she was on the way, A.M.V. would be transported to the visit site only to find out A.G. did not appear. The Department put into place a requirement that A.G. arrive at the site location an hour early so that the Department could wait to make sure she would be present before requiring the transportation of the child. When the Department offered rides to A.G. to attend the visits, A.G. would either not respond or would refuse to tell them where she could be picked up. At early visits, A.G. was prepared with a diaper bag and necessities for the child, but as the case went on, A.G. would arrive without supplies, causing the caseworker to go out to buy diapers and

milk for the baby. The last visit A.G. attended was in October, three months prior to trial, meaning A.G. missed the child's birthday and Christmas visits.

## BEST INTEREST

### Applicable Law

There is a strong presumption a child's best interest is served by keeping the child with the parent, and the Department has the burden to rebut this presumption with clear and convincing evidence. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re I.I.T.*, 648 S.W.3d 467, 476 (Tex. App.—San Antonio 2021, no pet.). In determining whether the Department has satisfied this burden, we consider whether the Department produced evidence of the statutory factors set forth in section 263.307(b) of the Texas Family Code[3] and the factors outlined in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when the evidence shows the parental relationship endangered the child's safety." *In re J.B.-F.*, No. 04-18-

---

[3] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child or the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system is available to the child. *See* TEX. FAM. CODE § 263.307.

[4] These factors are (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.).

Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). And "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A best-interest analysis may [also] consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *Id.* Finally, we presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a)

APPLICATION

### *Emotional & Physical Danger to the Children*

The evidence produced by the Department demonstrated a long history of domestic violence between Mother and Father. And, while Mother testified she was no longer in a relationship with Father, the evidence showed that they were still involved with one another and that domestic violence was still a part of their relationship as late as November of 2024, just two months before the trial. Such evidence weighs in favor of termination, and the trial court could have reasonably inferred that Mother's decision to continue in a relationship involving domestic violence, even after multiple children have been removed from her home, subjected A.M.V. to emotional and physical danger.

"A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being." *See In re A.H.,* No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op) (*quoting In re T.R.M.,* No. 14-14-00773-CV, 2015

WL 1062171, at *6 (Tex. App.—Houston [14th Dist.] Mar. 10, 2015, no pet.) (mem. op.). Likewise, the decision to continue subjecting the children to an abusive relationship, even after other children had been removed for the same reason, demonstrates Mother's inability to protect the children from the impact of domestic violence on them. "[A] parent's failure to remove [herself] and [her] children from a violent relationship endangers the physical or emotional well-being of the children." *Int. of L.W.*, 609 S.W.3d 189, 200 (Tex. App.—Texarkana, no pet.).

The trial court could have considered the history of prior terminations, Mother's decision to continue the relationship and to reject the offer of shelter, and Mother's testimony wholly denying any domestic violence despite the evidence to the contrary in determining that termination was in the best interests of the child. *In re S.R.T.,* No. 04-23-00600-CV, 2023 WL8896894, *3 (Tex. App.—San Antonio Dec. 27, 2023, no pet.) ("A fact finder may consider a parent's history with her other children in considering the danger or potential danger to a child.").

***Emotional & Physical Needs of the Children/Parenting Abilities***

The trial court also heard testimony concerning whether A.G. was able to meet the children's physical and emotional needs and had adequate parenting abilities. A.G. only attended 27 out of 47 visits, often failing to appear even after notifying the Department she was on her way and knowing it would then transport the child to the visit location. The trial court also heard from the Department that the caseworker often had to provide for the needs of the child during visits, including milk and diapers, because Mother would come unprepared.

Further, even at the time of the trial, Mother did not have a stable home and was instead moving from home to home of friends and relatives or living in motels. She also did not have employment. Mother admitted that she will not be able to provide a stable home and meet the needs of her child until she has housing and employment and that, while both of those items depend

on her addressing her mental health, she has not taken the steps necessary to do so. Having a mental health issue does not automatically disqualify a mother from regaining custody. *Maxwell v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00242-CV, 2012 WL 987787 (Tex. App.—Austin Mar. 23, 2012, no pet.). However, the trial court could have considered that A.G. has not taken steps to demonstrate that she is able to effectively manage her condition to ensure it does not pose a risk to the child's safety or well-being. *See In re S.R.,* 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). While Mother testified that she had an appointment to address her mental health the day after the scheduled trial, the trial court could have chosen not to believe her testimony or determined it was too little too late given it took her ten months after the child's removal to even complete an evaluation. *See In re A.B.*, No. 11-24-00206-CV, 2025 WL 409053, at *7 (Tex. App.—Eastland Feb. 6, 2025, pet. denied) (mem. op.)

### *Programs Available*

As to the availability of programs offered by the Department to assist A.G. and promote the best interest of the child, the record shows the Department prepared a service plan for A.G., and the trial court ordered A.G. to comply with the plan's requirements. A parent's compliance with a court-ordered service plan is relevant to a best interest analysis as it shows the parent's willingness to seek out, accept, and complete services as well as the parent's willingness and ability to effect positive changes within a reasonable time. *In re M.L.C.*, No. 04-17-00459-CV, 2017 WL 6597828, at *5 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied); *see also* TEX. FAM. CODE § 263.307(b)(10) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services); TEX. FAM. CODE § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable time); *Holley*, 544 S.W.2d at 371–72; *In re A.M.S.*, No. 04-18-00973-CV, 2019 WL

2194067, at *6 (Tex. App.—San Antonio May 22, 2019, no pet.) (mem. op.) ("A parent's non-compliance with the court-ordered service plan is probative with regard to a best interest determination."); *In re I.L.G.*, 531 S.W.3d 346, 355–56 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). (pointing out a parent's failure to comply with a court ordered service plan goes to the best-interest determination). Here, the caseworker testified, and Mother admitted that she took very little action to comply with the plan.

The plan required A.G. to establish a safe and appropriate home, obtain stable employment, complete domestic violence and parenting classes, complete a psychological evaluation and follow all recommendations, engage in individual counseling, comply with requests for random drug screens, and attend visits with the child. Mother testified that, at the time of trial, she did not have a stable home or employment. She testified she had completed both domestic violence and parenting class, but the caseworker testified it only had evidence of the parenting classes. Even if Mother had completed domestic violence classes, the trial court could have considered that Mother refused relocation to a domestic violence shelter and insisted that no domestic violence had occurred, despite overwhelming evidence to the contrary. Mother took 4 out of the 10 drug screenings and attended 27 out of 51 child visits. And, while she did complete a mental health evaluation two months prior to trial, she chose to stop going to individual therapy and did not follow up on the recommended treatment prior to trial. Accordingly, based on the testimony, the trial court could have inferred A.G. did not have the ability to motivate herself to utilize and complete the resources required to regain possession of her children. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

***Parent's Excuses for Acts or Omissions***

Mother chose to disavow the existence of any domestic violence but testified that she and Father were no longer in a relationship. However, the caseworker testified that they were living in motels together in the months prior to trial, they had a physical altercation during that time, and Father was present in the hospital when the youngest child was born, just one month prior to trial. She also testified that she is now on birth control, plans to have no more children, plans to get a job, and a home, and to address her mental health. But the trial court could have found this testimony to be non-credible evidence given that her actions did not match her words. While Mother testified her depression and anxiety were the cause of her failure to move forward, the Department provided her with opportunities to address her mental health, of which she chose not to take advantage.

Overall, based on the testimony of Mother and the caseworker, the trial court could have drawn an adverse inference against A.G. and determined her decisions not to comply with the parenting plan or to take advantage of the services offered to address her mental health weighed in favor of a finding that termination is in the best interest of the child. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824–25, 836 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (explaining trial court may draw adverse interest against parent who fails to provide valid excuses for acts or omissions). Furthermore, the trial court was free to conclude A.G.'s denial that she subjected the children to domestic violence showed she failed to take responsibility for her conduct. *See, e.g., In re H.R.,* 87 S.W.3d 691, 701 (Tex. App.—San Antonio 2002, no pet.) (holding evidence sufficient to sustain rejection of proffered excuses where parent failed to take responsibility for conduct).

***Desires of the Children/Children's Ages and Physical and Mental Vulnerabilities/Plans Held***

***by Foster Family***

A.M.V. was only one month old when she was removed, was in NICU for the first two months of her life and was discharged to a foster-to-adopt home, where she remains today with her younger sibling who was born in December 2024, just one month prior to trial. *See* TEX. FAM. CODE § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72 (desires of the child). In such circumstances, courts, including this one, have held a fact finder may consider whether the child has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *In re A.F.C.*, No. 04–17–00080–CV, 2017 WL 3159447, at *3 (Tex. App.—San Antonio July 26, 2016, no pet.) (mem. op.); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App. —Dallas 2005, no pet.); *In re U.P.,* 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The evidence presented by the Department caseworker and the foster mother established that, given the child's age at the time of removal and given that Mother was inconsistent with her visits, even missing them for the three months prior to trial, A.M.V. is bonded with her foster mother but not with Mother.

With respect to A.M.V.'s current placement, the Department produced evidence that she was in a stable home with her younger sister. While she was born premature, she is doing well today, sees an occupational therapist and an early intervention specialist four times a month, and has her physical and emotional needs being met in a foster-to-adopt home. Accordingly, this evidence weighs in favor of termination, and the trial court could have inferred A.M.V. is doing well in her current placement with the prospect of being adopted.

*Summation*

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction termination of A.G.'s parental rights is in the child's best interest. *J.F.C.*, 96 S.W.3d at 266. A.G. continues to disavow any domestic violence, despite overwhelming evidence to the contrary, refused or chose to not pursue support and services offered to her, does not have a stable home or employment, and failed to establish a bond with her child through regular visits. The evidence also established that A.M.V. is in a foster-to-adopt home that is meeting her physical, emotional, and medical needs. Accordingly, when considering A.G.'s conduct before and after the Department's removal of the children, we hold the evidence is legally sufficient to support the trial court's best interest finding. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied.) ("This court considers a parent's conduct before and after the Department's removal of the children.").

Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *J.F.C.*, 96 S.W.3d at 266. A.G. offered testimony that the trial court have found not credible. *J.O.A.*, 283 S.W.2d at 346 ("the factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor"). We will assume the trial court resolved conflicts in the testimony in favor of its judgment and do not find significant evidence "that a reasonable factfinder could not have credited in favor of the finding." *Id.* at 345 (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted).

Based on the foregoing, we affirm the trial court's order of termination.

Lori Massey Brissette, Justice